UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JANE DOE,

                           Plaintiff,

      -against-

JOHN ROE,

                           Defendant.
------------------------------------------------------------------X

Civil Action No: 17-cv-6029

# PLAINTIFF JANE DOE'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION TO PROCEED UNDER A PSEUDONYM AND FOR PROTECTIVE ORDER

# TABLE OF CONTENTS

                                                                                                     Page

TABLE OF AUTHORITIES ....................................................................................................i-ii

INTRODUCTION ........................................................................................................................1

STATEMENT OF FACTS ...........................................................................................................1

Plaintiff Goes Out With Her Roommate to Celebrate Halloween ..........................................1

Plaintiff Encounters Defendant John Doe ("Defendant") for the First Time .......................2

Defendant Rapes Plaintiff His Dorm Room ("the Assault") .................................................4

Defendant "Slut Shames" Plaintiff After the Assault ............................................................6

Defendant Stalks Plaintiff and Physically Assaults Plaintiff for a Third Time ...................6

Plaintiff is Left in Turmoil ......................................................................................................8

ARGUMENT................................................................................................................................9

     A. The litigation involves matters that are highly sensitive
        and of a personal nature ..........................................................................................10

     B. Disclosure of plaintiff's Identity would result in significant harm
        to Plaintiff ................................................................................................................11

     C. Defendant will not be prejudiced by allowing Plaintiff
        to proceed pseudonymously ..................................................................................13

     D. There is a weak public interest in knowing Plaintiff's Identity .......................13

CONCLUSION...........................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Doe v. Blue Cross & Blue Shield United of Wis.,*
    112 F.3d 869 (7th Cir. 1997)……………………………………………………...10-11

*Doe v. Boulder Valley Sch. Dist. No. RE-2,*
    2011 WL 3820781, at *3 (Aug. 30, 2011)……………………………………….. 14

*Doe v. Brown,*
    No. 15-144, 2016 WL 7155794, at * 1 (D.R.I. Feb. 22, 2016)…………………... 14

*Doe v. Cabrera,*
    301 F.R.D. 1 (D.D.C. 2014)……………………………………………………...10,11,12,15

*Doe v. City of Chicago,*
    360 F.3d 667, 669 (7th Cir. 2004)………………………………………………...11

*Doe v. Colgate Univ.,*
    No. 5:15-cv-1069 (LEK/DEP), 2016 WL 1448829,
    at *3 (N.D.N.Y. Apr. 12, 2016)………………………………………………….11-12,14,15

*Doe v. Cuomo,*
    No. 10-cv-1534 TJM/CFH, 2013 WL 1213174, at *5 (N.D.N.Y. 2013)…………10

*Doe v. Evans,*
    202 F.R.D. 173 (E.D.Pa 2001)…………………………………………………...10,14,15

*Doe v. Penzato,*
    2011 WL 1833007 (N.D.Ca. May 13, 2011)……………………………………. 10

*Doe v. Western Am. Province of the Capuchin Franciscan Friars,*
    2015 WL 8770017 (D. Or. Dec. 13, 2015)……………………………………...10

*Doe v. Shakur,*
    164 F.R.D. 359, 362 (S.D.N.Y. 1996)…………………………………………..11

*Does I Thru XXIII v. Advanced Textile Corp.,*
    214 F. 3d 1058, 1068 (9th Cir. 2000)…………………………………………...9

*Doe No. 2 v. Kolko,*
    242 F.R.D. 193 (E.D.N.Y. 2006)………………………………………….10,13, 14,15

*E.E.O.C. v. Spoa, LLC.,*
    2013 WL 5634337 (D. Md. Oct. 15, 2013)……………………………………..11,12

*Grottano v. the City of New York,*
    2016 WL 2604803 (S.D.N.Y. Mar 30, 2016)............................................. 10

*Prasad v. Cornell Univ.,*
    2016 WL 3212079 (N.D.N.Y. Feb. 24, 2016)............................................ 10

*Roe v. St Louis Univ.,*
    2009 WL 910738 (E.D.Mo. Apr. 2, 2009)..................................................11

*Rose v. Beaumont Indep. Sch. Dist.,*
    240 F.R.D. 264, 267 (E.D.Tex. 2007)......................................................12

## INTRODUCTION

Plaintiff Jane Doe ("Plaintiff"), by her attorneys, Nesenoff & Miltenberg, LLP, hereby seeks authorization to file a Complaint in the above-captioned matter as a pseudonymous Plaintiff. In light of the serious nature of the allegations contained in the Complaint, Plaintiff is justifiably concerned about the possibility of acts of reprisal that could further prevent Plaintiff from proceeding with her future endeavors, and inflict further harm, including the exact type from which Plaintiff seeks relief in this action. Plaintiff's identity, as described in the Complaint, should not be disclosed to the public due to the nature of the allegations in said Complaint. *See* Declaration of Gabrielle M. Vinci, Esq. attached to Plaintiff's *Ex Parte* Motion to Proceed Under Pseudonym and for Protective Order.

Plaintiff is prepared to provide a statement of her true identity under seal, upon the Court's request.

## STATEMENT OF FACTS

**Plaintiff Goes Out With Her Roommate to Celebrate Halloween**

Plaintiff arrived as a First Year Student at Hobart and William Smith Colleges ("HWS") in the Fall of 2016. Early on in her first semester, Plaintiff established herself as a hardworking student and quickly became a part of the HWS community.

On the night of October 29, 2016, Plaintiff and her then roommate C.F. ("Roommate C.F.") went out to celebrate Halloween. Prior to leaving their shared dorm room, Plaintiff and Roommate C.F. filled a 16.9-ounce water bottle approximately three-fourths (¾) full with straight vodka. Plaintiff and Roommate C.F. intended to take shots of the vodka from the water bottle throughout the night.

Throughout the night, Plaintiff, a petite young lady with limited prior experience with alcohol, drank numerous shots of straight vodka and cans of beer. Upon estimation, Plaintiff

1

consumed approximately four (4) shots of vodka within a half hour time period, and an additional two (2) twelve-ounce cans of beer. By estimation, Plaintiff consumed this amount of alcohol within one (1) hour.

As a result of her alcohol consumption, Plaintiff became heavily intoxicated and lost nearly all control of her mobility, speech, and awareness of her surroundings. Plaintiff began to feel sick and experienced dizzy spells, nausea, and a lack of control of her thoughts and physical actions. Plaintiff's intoxicated state increased as the night went on. As evidence of her impaired state, Plaintiff sent several text messages and made a number of phone calls throughout the night to several of her friends informing them that she was very drunk and calling out for help.

**Plaintiff Encounters Defendant John Roe ("Defendant") for the First Time**

On the night of October 29, 2016, Plaintiff and Roommate C.F. went to the Soccer House because Roommate C.F. had wanted to visit her boyfriend who lived there. Although Plaintiff was already extremely inebriated at the time and did not want to go to the Soccer House, Plaintiff agreed to accompany Roommate C.F. because she did not feel safe separating from Roommate C.F. in her state of intoxication.

When Plaintiff arrived at the Soccer House, Plaintiff was severely affected by the level of alcohol she had consumed and was in little to no control of herself or her surroundings. Plaintiff entered the Soccer House and believed Roommate C.F. had followed her inside; however, Roommate C.F. had remained outside of the Soccer House to speak with her boyfriend, leaving Plaintiff alone and vulnerable in her impaired state.

Plaintiff scanned the Soccer House for any sign of someone she knew. While doing so, Plaintiff saw a then-unknown man, Defendant, attempting to dance with a group of girls. Plaintiff was entirely uninterested in Defendant and did not pay much attention to him, as she did

not know nor had ever seen him before. Despite her indifference towards him, Defendant made eye contact with Plaintiff and began to walk in her direction. When Defendant reached Plaintiff, he immediately grabbed onto Plaintiff and began kissing her. Plaintiff was shocked, as she had never before met nor seen Defendant, and certainly did not expect to be forced to kiss him without any prior conversation or, more importantly, her prior consent.

After Defendant forced Plaintiff to kiss him at the Soccer House, he made several attempts to coerce Plaintiff to accompany him to his bedroom. Defendant repeatedly asked Plaintiff to go back to his room with him. Plaintiff repeatedly told Defendant "No." Plaintiff pleaded with Defendant to go downtown with her instead. Specifically, Plaintiff wanted to go to Beef and Brew, a popular local restaurant where Plaintiff knew her other friends had gone that night. Defendant refused to allow her to leave and go to the restaurant. Finally, Defendant told Plaintiff that he would bring her to Beef and Brew after they made a quick stop to his room. In her impaired state, Plaintiff believed that Defendant meant that the pair would briefly drop by his dorm room, likely to retrieve something such as Defendant's wallet, and then immediately proceed to Beef and Brew.

Plaintiff agreed to quickly stop by Defendant's room and then go to Beef and Brew only because she felt trapped and felt she had no other option or way to get to her friends and the people she trusted. As soon as Plaintiff agreed to allow Defendant to bring her to Beef and Brew, Defendant grabbed Plaintiff by the hand and led her out of the Soccer House. In her drunken state, Plaintiff was unable to keep up with Defendant's pace, and upon information and belief, stumbled while attempting to walk with Defendant due to her alcohol consumption. Defendant, upon information and belief, sensing Plaintiff's inability to keep up with him, locked arms with Plaintiff and forcefully pulled Plaintiff from the Soccer House to his room.

3

Plaintiff felt incredibly confused and unable to process her surroundings as Defendant shepherded her back to his room. Plaintiff was visibly intoxicated as she was unable to support herself and required assistance from Defendant to walk any distance. Upon information and belief, Defendant noticed and understood that Plaintiff was intoxicated, and took advantage of Plaintiff's vulnerable and susceptible state of mind.

**Defendant Rapes Plaintiff at His Dorm Room ("the Assault")**

Plaintiff and Defendant then arrived at Defendant's dorm room which, upon information and belief, was located in HWS' O'Dells residence building. Once Defendant and Plaintiff reached Defendant's room, Defendant walked into his bedroom and Plaintiff, expecting that they were only briefly stopping by, stood in the doorway attempting to take in her surroundings and regain her composure. However, despite having led Plaintiff to believe they would only stop by his room briefly before continuing on to Beef and Brew, Defendant quickly revealed his true intentions.

Upon entering his room, Defendant, without addressing Plaintiff at all, removed all of his clothing and put on a condom. Upon seeing Defendant, Plaintiff became increasingly confused and scared as she never meant, suspected, nor wanted to engage in any sort of sexual conduct with Defendant. Plaintiff remained clothed standing in Defendant's doorway. Upon information and belief, Plaintiff thereafter blacked out from being too intoxicated.

The next thing Plaintiff knew, she was naked on her back on Defendant's bed with Defendant on top of her. Defendant had vaginally penetrated Plaintiff with his penis and was having sex with Plaintiff. Plaintiff did not recall how her clothes were removed or how she ended up on Defendant's bed. Plaintiff recalls regaining consciousness and realizing what was happening to her. Plaintiff was bewildered, as at no point throughout that night did she, in any

4

way, manifest her consent to engage in any sexual act with Defendant. Plaintiff was so shocked and scared at what was happening to her, she felt paralyzed - unable to move her limbs, which felt heavy and limp - and was unable to stop what Defendant was doing to her. Plaintiff remained stock-still and silent as Defendant continued to vaginally penetrate her without Plaintiff's either implied or explicit consent.

At some point, Plaintiff felt Defendant withdraw and it appeared as though he were attempting to remove the condom he had earlier put on. At this point, sensing that this was her chance to escape, Plaintiff felt a jolt of adrenaline, sat up, and told Defendant "No, no." Instead of listening to Plaintiff's clear manifestation of her non-consent, Defendant placed the condom back onto his penis and once again vaginally entered Plaintiff. Plaintiff feared for her life and did not know what Defendant would or could do to her. Plaintiff had already told Defendant "No" after regaining her senses, and Defendant clearly dismissed her rejection and continued to rape Plaintiff.

At some point, Defendant again withdrew from Plaintiff and attempted to remove the condom a second time. Plaintiff re-iterated "No" to Defendant, but Defendant showed no signs of stopping. Realizing that she was in danger and not knowing what Defendant was capable of doing to her, Plaintiff believed that the only safe way out of her situation was if Defendant got what he wanted – i.e. he was able to ejaculate. Believing that it was her safest option, and the only way to end this horrible experience without further physical trauma, Plaintiff performed oral sex on Defendant in order to make him ejaculate. Defendant ejaculated in Plaintiff's mouth. As soon as Defendant ejaculated, Plaintiff, as quickly as she could in her still drunken state, shot up from Defendant's bed and searched for her clothes.

5

**Defendant "Slut Shames" Plaintiff After the Assault**

While Plaintiff was searching for her clothing and attempting to quickly dress herself, Defendant snidely asked Plaintiff "Do you even know my name?" This was the first time Plaintiff recalls Defendant ever saying anything to her after they reached his room at O'Dells. Plaintiff replied truthfully that she did not know Defendant's name. In response, Defendant appeared disgusted and exclaimed "HOW DO YOU NOT KNOW **MY** NAME?" Plaintiff felt embarrassed as though she was somehow guilty of not knowing who her attacker was.

Defendant, after already stripping Plaintiff of her dignity by sexually assaulting her, added salt to the wound by shaming Plaintiff for their non-consensual sexual encounter and making Plaintiff feel as though she was somehow at fault for the Assault. Plaintiff felt "slut-shamed," a term colloquially used to describe the feeling of embarrassment and shame caused by others' negative and degrading comments or opinions following a sexual encounter. Before she was able to leave, Defendant stopped her and told Plaintiff "Okay, now go back to your room and don't hook up with anyone else tonight." Plaintiff was confused by this statement as she and Defendant had not "hooked up." Rather, Defendant had raped Plaintiff and, in Plaintiff's opinion, was continuing to exert his power over her by making demands of her even after she left his room.

**Defendant Stalks Plaintiff and Physically Assaults Plaintiff for a Third Time**

Following the Assault, Plaintiff was left extremely confused and in utter disbelief. Plaintiff could not fathom what had just happened to her and tried to bottle up her emotions, which only proved more harmful. In the days following her Assault, Plaintiff confided in a few of her closest friends what had happened, and attempted to piece together and come to terms

6

with what Defendant had done to her. Unfortunately, and sickeningly, Defendant had no intention of allowing Plaintiff to process what had happened on the night of October 29, 2016.

On or about December 3, 2016, Plaintiff and her friend, M.B. ("Friend M.B."), were socializing at Beef and Brew with a number of other classmates. At one point in the night, Plaintiff felt as though she was being watched. When Plaintiff looked around, she immediately saw that Defendant was also at Beef and Brew and was standing alone and staring directly at her. Plaintiff, in an attempt to protect herself, surrounded herself with her friends and attempted to distract herself from Defendant's prying gaze. Despite being surrounded by her friends, Plaintiff continued to sense Defendant, who was only a few feet away from her and her friends, staring at her. Alarmed, Plaintiff excused herself into another room at Beef and Brew.

Less than one minute later, Plaintiff looked up and saw Defendant had followed her into the second room at Beef and Brew and was once again standing to the side alone, just a few feet away from Plaintiff, and was staring at her. Plaintiff was immediately fearful and again excused herself to return to that first room. Still feeling uneasy, Plaintiff checked to see if Defendant had again followed her from room to room. As he had just done before, Defendant stalked Plaintiff back into the first room and was still standing alone staring at her.

Before Plaintiff was able to notice or comprehend what was about to happen, Defendant's body was suddenly against her. Although there were multiple paths to take throughout the room, Defendant intentionally walked in Plaintiff's direction and, upon reaching her, slid behind her and rubbed his genital area against Plaintiff's buttocks. Once again, Plaintiff, in her mind, was transported back to the night of the Assault and immediately felt sickened. Plaintiff raced outside of Beef and Brew to an outdoor area of the restaurant, and burst into tears. Friend M.B. followed Plaintiff outside and tried to calm her down. Friend M.B. was eventually able to coax Plaintiff to

7

go back inside Beef and Brew. Once back inside, however, Plaintiff could still sense Defendant staring at her and at one point, saw Defendant again moving towards her and attempting to cut through Plaintiff's friends to reach her. Upon seeing this, Plaintiff grabbed Friend M.B. and left as quickly as she could.

**Plaintiff is Left in Turmoil**

As a direct and foreseeable result of the Assault, Plaintiff found it increasingly more difficult to be on HWS' campus for fear of running into, and being attacked by, Defendant again. Plaintiff was made to feel ashamed of what had happened to her, and felt absolutely helpless as she remained on campus knowing that she had been sexually assaulted and seemingly no one at her college cared to support or help her through this trying time. Meanwhile, Defendant was able to continue living on campus and attending HWS, seemingly without withstanding any consequences. Plaintiff found it impossible to continue attending HWS, and was forced to leave.

As a direct and proximate result of the above conduct, Plaintiff sustained tremendous damages, including, without limitation, extreme emotional distress and psychological harm, loss of educational and career opportunities, disruption of her academic career, reputational damages, economic injuries and other direct and consequential damages.

As a result of Defendant's actions, Plaintiff's emotional and psychological health has been ruined. As a direct and proximate result of Defendant's actions and the trauma Plaintiff experienced from the Assault, Plaintiff has been, and continues to be, treated for Post-Traumatic Stress Disorder and high anxiety. Plaintiff seeks redress from this Court to undo the wrongs occasioned by Defendant to her education, mental health, and future.

In light of these facts, Plaintiff should be permitted to protect her identity by filing the Complaint under a pseudonym. Plaintiff is prepared to address measures to protect the

confidentiality of her identity should the Court require disclosure to the public at a later stage in the proceedings.

## ARGUMENT

Many federal courts have permitted parties to proceed anonymously when special circumstances arise. Generally, in determining whether to permit a party to proceed anonymously, a court "must balance the need for anonymity against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party." *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F. 3d 1058, 1068 (9th Cir. 2000). The Second Circuit has articulated a non-exhaustive list of factors to consider when conducting this balancing test: (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice, if any, differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative

9

mechanisms for protecting the confidentiality of the plaintiff. *Doe v. Cuomo*, No. 10-CV-1534 TJM/CFH, 2013 WL 1213174, at *5 (N.D.N.Y. 2013).

As outlined below, a balancing of these factors leads to the inevitable conclusion that Plaintiff must be permitted to proceed anonymously in this litigation.

**A. The litigation involves matters that are highly sensitive and of a personal nature.**

Plaintiff should be permitted to proceed under a pseudonym given the highly sensitive and personal nature of this litigation and the facts and circumstances underlying Plaintiff's claims.

Plaintiff does not merely contend that the revelation of her name would result in embarrassment or public humiliation. Rather, Plaintiff notes the highly sensitive nature and privacy issues that could be involved with being identified as a victim of sexual assault. In fact, courts around the country have permitted victims of sexual assault and plaintiffs alleging similar claims to proceed anonymously. *See e.g. Doe No. 2 v. Kolko*, 242 F.R.D. 193 (E.D.N.Y. 2006); *Grottano v. the City of New York*, 2016 WL 2604803 (S.D.N.Y. Mar. 30, 2016); *Prasad v. Cornell Univ.*, 2016 WL 3212079 (N.D.N.Y. Feb. 24, 2016) (permitting identification of alleged victim of sexual assault as "Jane Doe" during proceedings); *Doe v. Penzato*, 2011 WL 1833007 (N.D.Ca. May 13, 2011); *Doe v. Evans*, 202 F.R.D. 173 (E.D.Pa. 2001); *Doe v. Western Am. Province of the Capuchin Franciscan Friars*, 2015 WL 8770017 (D. Or. Dec. 13, 2015) (allowing the plaintiff to proceed as "Jane Doe" in light of the "accepted practices of the federal courts of the United States, allowing those who have been victims of sexual assault and/or who fear reprisals from the particular litigation to commence cases under assumed names"); *Doe v. Cabrera*, 301 F.R.D. 1 (D.D.C. 2014) (allowing victim of sexual assault to proceed as a "Jane Doe" plaintiff); *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869 (7th Cir. 1997)

10

(indicating that the use of "fictitious names [is] allowed when necessary to protect the privacy of … rape victims…"); *Roe v. St. Louis Univ.*, 2009 WL 910738 (E.D.Mo. Apr. 2, 2009) (allowing rape victim plaintiff to use a pseudonym because plaintiff's privacy interest outweighed the public's right to access judicial records); *E.E.O.C. v. Spoa, LLC.*, 2013 WL 5634337 (D. Md. Oct. 15, 2013) (finding that "sexual assault" is a "highly sensitive and personal matter"); *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004) (in denying the right to proceed anonymously, court emphasized the fact that the plaintiff was "not a minor, **a rape or torture victim**, a closeted homosexual, or … a likely target of retaliation by people who would learn her identity only from a judicial opinion or other court filing") (emphasis added).

Further, courts have recognized that allowing a plaintiff to proceed anonymously in similar situations is not merely a tactic to avoid inconsequential embarrassment or humiliation. Indeed, courts have recognized that the forcing of plaintiff's who have been victims of sexual assault would result in not only further embarrassment, but could result in further victimization and loss of dignity, resulting in more harm than good. *See Doe v. Cabrera*, 301 F.R.D. 1, at *5, n. 6 (D.D.C. 2014); *Doe v. Shakur*, 164 F.R.D. 359, 362 (S.D.N.Y.1996); *Rose v. Beaumont Indep. Sch. Dist.*, 240 F.R.D. 264, 267 (E.D.Tex. 2007).

Similarly, Plaintiff here should be permitted to proceed anonymously due to the highly sensitive and personal nature associated with being a victim of sexual assault.

**B. Disclosure of Plaintiff's identity would result in significant harm to Plaintiff.**

Plaintiff should be permitted to proceed anonymously in this matter as the revelation of her identify would result in significant harm to Plaintiff, the exact type which she seeks to remedy by the commencement of this lawsuit. *See Doe v. Colgate Univ.*, No. 5:15-CV-1069 (LEK/DEP), 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016)("[s]hould Plaintiff prevail in

providing that the charges against him were unfounded and the procedures Defendants followed in their investigation were unfair, forcing Plaintiff to reveal his identity would further exacerbate the emotional and reputational injuries he alleges.").

Courts have repeatedly recognized that the disclosure of the names of victims of sexual assault makes such individuals susceptible to added ridicule, stigmatization, and further mental and emotional harm. *See e.g.*, *Doe v. Cabrera*, 301 F.R.D. 1, at *5, n. 6 (D.D.C. 2014); *Doe v. Shakur*, 164 F.R.D. 359, 362 (S.D.N.Y.1996); *Rose v. Beaumont Indep. Sch. Dist.*, 240 F.R.D. 264, 267 (E.D.Tex. 2007); *E.E.O.C. v. Spoa, LLC.*, 2013 WL 5634337, at *3 (D. Md. Oct. 15, 2013) (finding that ordering the plaintiff to proceed under her own name "poses needless risk of mental harm" and further finding that "[i]t is not simply that Doe may face embarrassment from … widespread disclosure … but rather she may face psychological harm from having this sensitive experience made permanently acailable to anyone with Internet access"). Here, Plaintiff seeks redress for, among toher things, the tremendous emotional harm she has suffered as a result of the Assaul perpetrated by Defendant. To force Plaintiff to reveal her identity would not merely fail to remedy the already present emotional wound she hopes to heal, but would leave her vulnerable to further harm. In other words, forcing Plaintiff to reveal her identity would not further any aspect of the litigation but would "instead pose[] a risk that Plaintiff would be subject to unnecessary ridicule and attention." *Doe v. Colgate Univ.*, 2016 WL 1448829, at *3.

Based on the foregoing, Plaintiff should be permitted to proceed anonymously, as requiring her to reveal her identity would result in significant harm to Plaintiff, including the exact damages she seeks to remedy in this matter; namely, physical, psychological, emotional and reputational damages, economic injuries and the loss of educational and career opportunities.

12

### C. Defendant will not be prejudiced by allowing Plaintiff to proceed pseudonymously.

Further, Plaintiff should be permitted to proceed anonymously as Defendant will not be prejudiced in any way by proceeding against an anonymous party. "Other than the need to make redactions and take measures not to disclose plaintiff's identity, Defendant will not be hampered or inconvenienced merely by Plaintiff's anonymity in court papers." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006). Significantly, Defendant is already aware of Plaintiff's true identity. Thus, there is no doubt that Defendant will have an unobstructed opportunity to conduct discovery, present his defenses and litigate this matter, regardless of whether Plaintiff identifies herself or proceeds anonymously. It should further be noted that Plaintiff has similarly named Defendant under a pseudonym - John Roe. Like Defendant, Plaintiff is aware of Defendant's true identity. Thus, by proceeding under a pseudonym for both parties, Plaintiff merely asks to be placed on an equal playing field as Defendant - Defendant is in no better or worse position to litigate, or specifically in Defendant's case defend, this matter than Plaintiff is.

Accordingly, Plaintiff must be permitted to proceed anonymously in this action as revealing her name will cause significant prejudice to Plaintiff, while proceeding anonymously will not hinder Defendant in any way.

### D. There is a weak public interest in knowing Plaintiff's identity.

Plaintiff should also be permitted to proceed in this action anonymously as the public does not have a strong interest in knowing her identity. Considering the purely legal nature of the claims presented (i.e. Defendant violated Plaintiff common law and civil rights by virtue of raping her while they were students together at HWS), there is a weak public interest in learning Plaintiff's identity as an individual. Rather, quite the opposite, as the Second Circuit has recognized, "the public generally has a strong interest in **protecting** the identities of sexual

13

assault victims so that other victims will not be deterred from reporting such crimes." *See Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195-96 (E.D.N.Y. 2006) (*citing Doe v. Evans*, 202 F.R.D. 173, 176 (E.D.Pa. 2001)) (emphasis added); *Doe v. Evans*, 202 F.R.D. 173 (E.D. Pa. 2001) (finding that "the public has an interest in protecting the identities of sexual assault victims so that other victims will feel more comfortable suing to vindicate their rights…").

While in the past courts strongly disfavored allowing plaintiffs to proceed anonymously except in extreme circumstances, the nature of the Internet today is such that any plaintiff's identity is readily accessible via a simple online search; thus, courts must be willing to afford additional protective measures to avoid further damage to a plaintiff involved in a matter concerning such egregious violations as the present one. *See Doe v. Boulder Valley Sch. Dist. No. RE-2*, 2011 WL 3820781, at *3 (Aug. 30, 2011) ("[A]lthough the media frequently exercise discretion in not publishing the names of sexual assault victims, electronic case filing allows anyone with an internet connection to access public pleadings, which means that revealing plaintiffs' names could expose them to contact be persons seeking to exploit their perceived vulnerability").

Further, there is no doubt that "cases stemming from … sexual abuse on college and university campuses have garnered significant media attention, posing the risk of further reputational harm to both the plaintiffs in these cases …" *Doe v. Colgate Univ.,* No. 5:15-CV-1069 (LEK/DEP), 2016 WL 1448829, at *2 (N.D.N.Y. Apr. 12, 2016); s*ee also Doe v. Brown,* No. 15-144, 2016 WL 715794, at * 1 (D.R.I. Feb. 22, 2016) ("This case concerns an issue that has been the subject of increasing attention and controversy, particularly in academia, and which has garnered much recent media and scholarly commentary").

Here, if Plaintiff were required to reveal her name, even if Plaintiff were to succeed on her claims against Defendant, the public's access to her identity would leave her vulnerable to further exploitations and would result in further damage to her future educational and career endeavors, resulting in additional mental, emotional and psychological harm, the very harms which she seeks to remedy in this action. As such, "protecting the anonymity of sexual assault victims and those accused of committing sexual assault can be an important safeguard to ensure that the due process rights of all parties are protected." *Doe v. Colgate Univ.,* No. 5:15-CV-1069 (LEK/DEP), 2016 WL 1448829, at *2 (N.D.N.Y. Apr. 12, 2016).

Finally, there is simply nothing about the status of the Plaintiff that would heighten any public interest beyond the normal public interest in any judicial proceedings sufficient to outweigh Plaintiff's right to privacy. Moreover, the public's knowledge will only be minimally restricted, as it will still know what is alleged to have occurred. Allowing Plaintiff to proceed anonymously will not significantly obstruct the public's interest in this matter. To the contrary, forcing Plaintiff to reveal her identity could have a potential chilling effect on other similarly situated future plaintiffs, a result widely recognized by federal courts across the nation. *See e.g., Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195-96 (E.D.N.Y. 2006); *Doe v. Cabrera*, 301 F.R.D. 1, at *6-8, n. 9 (D.D.C. 2014) ("[t]his Court agrees that *unnecessarily* compelling victims of alleged sexual assault to reveal their identities in a case could set forth precedent that has the unintended consequence of discouraging similarly situated victims in the future from reporting sexual assault crimes"); *Doe v. Evans*, 202 F.R.D. 173, 176 (E.D.Pa. 2001)) (emphasis added); *Doe v. Evans*, 202 F.R.D. 173 (E.D. Pa. 2001)(finding that "the public has an interest in protecting the identities of sexual assault victims so that other victims will feel more comfortable suing to vindicate their rights…").

Accordingly, there is not a strong public interest in knowing Plaintiff's identity as an individual, as the issues presented to this Court concern a much greater population of potential plaintiffs.

Based on the foregoing, in consideration of the balancing of relevant factors, the Court should allow Plaintiff to employ a pseudonym in this matter. The interests of Defendant and/or the public will not be harmed at this early stage of the case if Plaintiff's name is not revealed. Plaintiff and her attorneys are prepared to address measures to protect the confidentiality of her identity should the Court require disclosure to the public at a later stage in the proceedings.

## CONCLUSION

For these reasons and such other reasons as may appear just to the Court, Plaintiff Jane Doe requests that her *Ex Parte* Motion to Proceed Under Pseudonym and for Protective Order be granted in its entirety.

**Dated:** New York, New York
August 9, 2017

        **NESENOFF & MILTENBERG, LLP**

        By: **/s/ Andrew Miltenberg**
            **Andrew T. Miltenberg, Esq.**
            **Stuart Bernstein, Esq.**
            **Gabrielle M. Vinci, Esq.**
            **363 Seventh Avenue, Fifth Floor**
            **New York, New York 10001**
            **(212) 736-4500**
            **amiltenberg@nmllplaw.com**
            sbernstein@nmllplaw.com
            **gvinci@nmllplaw.com**

            *Attorneys for Plaintiff Jane Doe*